### QUINN v. COMPLETE ELECTRIC CONST. CO.

*(Circuit Court, S. D. New York. May 23, 1891.)*

NEGLIGENCE OF SERVANT—LIABILITY OF MASTER

    Where plaintiff was injured by the negligence of a truck-driver in the employment of defendant, but who was on that day serving another company under a contract which defendant had made with the latter to furnish it daily with a horse, truck, and driver, defendant, and not the other company, is liable for the injury.

At Law. On motion for new trial.

*George A. Black*, for complainant.

*H. Applington*, for defendant.

WALLACE, J. The plaintiff was run over by a horse and truck driven by one Murphy, by the negligence of Murphy, who at the time was performing a service for the Western Electric Company, but was in the employ of the defendant, and was driving its horse and truck. The question in the case is whether Murphy was the servant of the defendant or of the Western Electric Company. If he was not the servant of the defendant, the instructions given to the jury on the trial were incorrect, and the verdict for the plaintiff cannot stand. The pertinent facts are

these: Pursuant to a contract by which the defendant was to furnish the Western Electric Company with a horse, truck, and driver daily to do its trucking work for a specified period at a specified price, the defendant each day selected from its men and equipment the horse, truck, and driver which were to be at the disposition of the Western Electric Company, and on the day the plaintiff was injured had sent Murphy with the horse and truck, which he was driving at the time. Murphy had taken a load of goods for the Western Electric Company, and was returning to its factory, when he ran over the plaintiff. Under these circumstances, although the Western Electric Company was the primary employer for whom the service which Murphy was engaged in was being rendered, the defendant was Murphy's immediate superior. It had hired him, and could discharge or retain him, and thus had the selection and control of the means of accomplishing the object of the contract which had been made between the Western Electric Company and itself. The defendant was not the servant or agent of the Western Electric Company, but was an independent contractor; hence those employed by the defendant to do the work contracted for were its servants, and not those of the Western Electric Company. *Reedie* v. *Railroad Co.*, 4 Exch. 244; *Blake* v. *Ferris*, 5 N. Y. 48; *Hilliard* v. *Richardson*, 3 Gray, 349; *Allen* v. *Willard*, 57 Pa. St. 374; *Scammon* v. *Chicago*, 25 Ill. 424.

The rule of *respondeat superior* rests on the power which the superior has a right to exercise, and which, for the protection of third persons, he is bound to exercise, over the acts of his subordinates. It does not apply to cases where the power of control does not exist, and the power does not exist when the primary employer has no voice in the selection or retention of the subordinate. The following citations illustrate the application of the rule: *Laugher* v. *Pointer*, 5 Barn. & C. 560, was an action to recover damages done to plaintiff's horse. The defendant owned a carriage, and hired of a stable-keeper a pair of horses and a driver to draw it for a day or a short time. The injury was done through the carelessness of the driver, while the owner of the carriage was riding in it. The plaintiff was nonsuited, on the ground that the driver was the servant of the stable-keeper, and not of the owner of the carriage. In *Quarman* v. *Burnett*, 6 Mees. & W. 497, the defendant owned the carriage, and hired a pair of horses and the driver for a short time, during which an injury was done to the plaintiff's horses. It was held that the defendant was not liable, the court stating: "That person is undoubtedly liable who stands in the relation of master to the wrong-doer; he who has selected him as his servant, from the knowledge of or belief in his skill and care, and who could remove him for misconduct, and whose orders he was bound to receive and obey." LITTLEDALE, J., said: "He was the servant of one or the other, and not the servant of one and the other. The law does not recognize a several liability in two principals." In *Jones* v. *Mayor, etc.*, 14 Q. B. Div. 890, one Dean contracted with the defendant to furnish a horse and driver to draw a watering-cart belonging to defendants, under the supervision of inspectors employed by defendants, whose duty it was to direct the drivers of the wa-

tering-carts when and where to water the streets. As their order was necessary for this purpose, the inspectors had authority and control over the drivers of the carts. The plaintiff's carriage was injured through the negligence of the driver furnished by Dean. The court held that he could not recover of the defendants. In *Michael* v. *Stanton*, 3 Hun, 462, one Hinkley was employed by Gilbert, who sent him to cart goods for the defendant, and told him where to load. The court said: "The defendant did not employ Hinkley, and had no power to discharge him. This is the only test by which to determine which is the master, and, as such, liable to the person injured." In *Fenton* v. *Steam-Packet Co.*, 8 Adol. & E. 835, a steam-vessel was under a charter-party for six months, for the conveyance of goods from Newcastle and Goole, or such other coasting stations as the charterer might from time to time employ it in; the owners to keep it in order and appoint the crew, but the crew to be paid by the charterer, as also all disbursements. The charterer did not interfere with the navigation of the vessel, but while he was on board, through the negligence of the crew, it ran against the plaintiff's boat. In a suit for the injuries the court held that the owners were liable. In *Dalyell* v. *Tyrer*, 28 Law J. Q. B. 52, a ferry-man hired from the defendant, for one day, a steam-tug and crew, to assist him in carrying passengers across. The ferry-man received the fares, but the defendant hired and paid the crew. By the negligence of the crew, the plaintiff, while being carried over the ferry, was hurt, and it was held that he was entitled to recover against the defendant. These authorities justify the instructions given to the jury in the present case.

The motion for a new trial is denied.